FILED
2018 Dec-21  PM 03:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION**

ALABAMA ONE CREDIT UNION,

      Plaintiff,

v.

PAUL TOPPINS, et al.,

      Defendants.

CIVIL ACTION NO.

## DEFENDANT UNITED STATES' MOTION AND BRIEF TO QUASH, DISMISS, AND REMAND

COMES NOW the United States of America, by and through Jay E. Town, United States Attorney for the Northern District of Alabama, and Jack Hood, Assistant U.S. Attorney, and pursuant to Rules 12 (b)(1), 12(b)(6), and 56 of the Federal Rules of Civil Procedure, moves the Court for an Order: (1) quashing the portion of the July 13, 2016 Order, entered in the Circuit Court of Tuscaloosa County, regarding an *in camera* inspection of regulatory information contained in or related to examination reports prepared by, on behalf of, or for the use of, the National Credit Union Administration ("NCUA"), an independent agency of the executive branch of the United States Government; (2) dismissing the third-party action against the United States and the NCUA;  and (3) remanding the remainder

of the case to the Circuit Court of Tuscaloosa County, Alabama. In support of its

motions, are the following:

## I.    FACTS

There are no genuine issues of material fact in dispute within the meaning of

Rule 56 of the Federal Rules of Civil Procedure as to the following:

1.    The NCUA is an independent agency within the executive branch of

the United States Government whose primary mission is to regulate, insure, and

charter credit unions pursuant to its authority under the Federal Credit Union Act,

12 U.S.C. §1751, *et seq.*

2.    On or about August 11, 2016, the NCUA first received notice that an

Order from the Circuit Court of Tuscaloosa County, Alabama had been entered

directing the Alabama One Credit Union ("ACUA" ) to submit "regulatory

information" controlled by the NCUA for *in camera* inspection by the Circuit

Court to determine if it is privileged and relevant to the claims in the underlying

action.  In a related Protective Order of the same date, the Circuit Court defined

"regulatory information" to include information and records that are protected

from public disclosure by federal regulation.  12 C.F.R. Part 792.  (Copies of said

Orders of the Circuit Court of Tuscaloosa County are attached as Exhibit 3 to the

Notice of Removal filed contemporaneously herewith).

3.     The Circuit Court case was removed to federal district court on August 23, 2016, but it was remanded to the Circuit Court on May 26, 2017, in part because the United States and the NCUA were not parties. *See Alabama One Credit Union v. Paul Toppins, et al.*, Case No. 7:16-cv-01382-LSC (Doc.31), opinion entered May 26, 2017 (Exhibit 5).

4.     The federal district court, in the related case of *John David Carruth v. Justice D. "Jay" Smith, III, et al.*, Case No. 7:15-cv-1089-LSC, on April 18, 2017, entered an Order (Doc. 127) (Exhibit 6) in favor of the United States (and the NCUA) quashing subpoenas that sought the similar NCUA regulatory information in the hands of certain parties.

5.     Federal laws and NCUA's *Touhy* regulations (called this after the famous case of *United State ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951)), require that a party seeking access to such information and records must submit a request to NCUA first, and prohibit a litigant in possession of such records or information from producing them except as permitted by NCUA Regulations.  12 C.F.R §792.40.

## II. ARGUMENT AND AUTHORITIES

### A. Derivative Removal Jurisdiction.

Derivative removal jurisdiction has been described as follows:

"28 U.S.C. § 1442(a)(1) grants federal courts removal jurisdiction over claims against federal defendants. But this jurisdiction is derived from the

jurisdiction of the court from which the claims are removed. *Merkulov v. United States Park Police*, 75 F. Supp. 3d 126, 130 (D.D.C. 2014) (holding that the doctrine of derivative jurisdiction applies to removal under Section 1442 and collecting cases that hold Congress's abrogation of the doctrine of derivative jurisdiction with respect to removal under 28 U.S.C. § 1441 does not impact the doctrine's application to Section 1442). Accordingly, this Court has jurisdiction over claims removed from the Superior Court of the District of Columbia under Section 1442(a)(1) only to the extent that the Superior Court itself had jurisdiction to hear those claims. *See Lambert Run Coal Co. v. Baltimore & Ohio R.R. C*o., 258 U. S. 377, 382, 42 S. Ct. 349, 66 L .Ed. 671 (1922) ("If the state court lacks jurisdiction of the subject-matter or of the parties, the federal court acquires none, although it might in a like suit originally brought there have had jurisdiction."). Applying this rule to the case at hand, my jurisdiction over Ms. Day's claims depends on whether the Superior Court of the District of Columbia has jurisdiction to hear Title VII claims against federal employers."

*Day v. Azar*, 308 F. Supp. 3d 140, 142 (D.D.C. 2018).

Defendants Hutto and Carver were the AOCU's outside auditors and their third-party complaint against the NCUA, and the Tuscaloosa Circuit Court's order of joinder of the NCUA, show no citation to any federal statute (or case law authority) that authorizes this third-party action in state or federal courts. There is no subject matter jurisdiction in these circumstances due to the sovereign immunity held by the United States and its federal officers and agencies. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475–76 (1994) (the court lacks subject matter jurisdiction over the suit if there is no specific waiver of sovereign immunity as to a particular claim filed against the Government); *United States v. Sherwood*, 312 U.S. 584, 586 (1941) ("[T]he terms of [the government's] consent to be sued in any court define that court's jurisdiction to entertain the suit.").

**B.    Only the Discovery Issues Raised by the United States and the**

**NCUA Are Properly Before the Court.**

The removal is proper under 28 U.S.C. § 1442(a)(1), but it is only the

discovery proceeding, not the entire action, that can be properly before this Court.

*See* § 1442(d)(1) ("The terms "civil action" and "criminal prosecution" include any

proceeding (whether or not ancillary to another proceeding) to the extent that in

such proceeding a judicial order, including subpoena for testimony or documents,

is sought or issued.  If removal is sought for a proceeding described in the previous

sentence, and there is no other basis for removal, only that proceeding may be

removed to the district court.").

As one federal district court has stated:

"Under 28 U.S.C. § 1450, "[a]ll injunctions, orders, and other proceedings
had in [a state court] action prior to its removal shall remain in full force and
effect until dissolved or modified by the district court." Because federal
procedural law governs proceedings once they are removed to federal court,
§ 1450 recognizes the district court's authority to dissolve or modify orders
issued by the state court prior to removal. *See Granny Goose Foods, Inc. v.
Brotherhood of Teamsters & Auto. Truck Drivers Local No. 70 of Alameda
Cty.*, 415 U.S. 423, 437–38 (1974) (citing *Ex Parte Fisk*, 113 U.S. 713, 725–
26 (1885)); *see also Maseda v. Honda Motor Co., Ltd.*, 861 F. 2d 1248,
1252 (11th Cir. 1988). Therefore, although the State Court Order remains in
full force and effect after removal, the Court has the authority to dissolve or
modify it. *See, e.g., McCarthy v. Sherwin–Williams Co.*, 2:05 CV 61–FTM
33SPC, 2005 WL 1244969, at *1 (M.D. Fla. May 13, 2005) (finding the
federal district court had jurisdiction to reconsider, modify or affirm a state
court's summary judgment order after removal). Accordingly, the Court will
assess whether the previously compelled examination of Plaintiff meets the
requirements of Rule 35 of the Federal Rules of Civil Procedure to

determine if the State Court Order should be affirmed, modified or dissolved."

*Rellas v. Lee County Port Authority*, 2:18–cv–220–FtM–38CM, 2018 WL 3361885 (M.D. Fla. July 10, 2018).

C.    **The Court Should Enter an Order Quashing the In Camera Order and Any Subpoenas Under Similar Reasoning Found in the Court's Order in the *John David Carruth v. Justice D. "Jay" Smith, III, et al.*, Case (Doc. 127).**

For consistency, this Court should enter an Order similar to the one it entered on April 18, 2018 in the *Carruth* case, quashing the *in camera* order and any NCUA documents under any subpoenas.seeking similar NCUA regulatory information in the hands of the parties.

## III. CONCLUSION

WHEREFORE, for the foregoing reasons, the Circuit Court order to the parties to produce regulatory information to the Circuit Court for it to conduct an *in camera* inspection and determine whether such information and records are relevant and privileged should be quashed, and the parties should be admonished to comply with NCUA's *Touhy* Regulation to obtain access to any nonpublic regulatory information protected from disclosure under federal regulations; the third-party complaint against the United States and the NCUA should be dismissed due to sovereign immunity and lack of subject matter jurisdiction; and the

6

remainder of the case should be remanded to the Circuit Court of Tuscaloosa,

County, Alabama. Further, this Court should grant all equitable and just relief to

which the United States and its independent agency, the NCUA, may be entitled.


Respectfully submitted,

JAY E. TOWN
UNITED STATES ATTORNEY

s/ Jack Hood
Jack Hood
Assistant United States Attorney
U.S. Attorney's Office
State Bar No. D41J
1801 Fourth Avenue North
Birmingham, Alabama 35203
(205) 244-2103
(205) 244-2181 (fax)
jack.hood@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2018, I filed the foregoing with the

Clerk of Court and served same by email and by Federal Express of such filing to:

Andrew P. Campbell
A Todd Campbell
John Guin
Stephen Wadsworth
CAMPBELL, GUIN, WILLIAMS,
    GUY & GIDIERE, LLC
505 20th Street North, Suite 1600
Birmingham, AL 35203
205/224-0755
Andy.campbell@campbellguin.com
todd.campbell@campbellguin.com
john.guin@campbellguin.com
stephen.wadsworth@campbellguin.com
Attorneys for Plaintiff

Thomas E. Baddley, Jr.
Jeffery P. Mauro
John Parker Yates
BADDLEY & MURO, LLC
850 Shades Creek Parkway, Suite 310
Birmingham, AL 35209
205/939-0090
jpy@baddleymauro.com
tbaddley@baddleymauro.com
jpmauro@baddleymauro.com
Attorneys for Plaintiff

William J. Gamble, Jr.
A Grady Williams, IV

Joseph M. Aguirre
PHELPS, DUNBAR, LLP
101 Dauphin Street, Suite 1000
Mobile, AL 36602
251/441-8205
Will.gamble@phelps.com
Bo.williams@phelps.com
Joseph.Aguirre@phelps.com
Attorneys for Defendants Hutto &
    Carver

Barry V. Frederick
Brandi B. Frederick
THE FREDERICK LAW FIRM
5409 Trace Ridge Lane
Birmingham, AL 35244
205/739-0043
barry@frederickfirm.net
brandi@frederickfirm.net
Attorneys for Defendants
    Frederick & Frederick

David R. Wells
K. Phillip Luke
WHITAKER, MUDD, LUKE & WELLS, LLC
2011-4th Avenue North
Birmingham, AL 35203
205/639-5300
dwells@wmslawfirm.com
Attorneys for Watson and Greene and
    Company Appraisers

Michael A. Vercher
Jonathan M. Hooks
CHRISTIAN & SMALL, LLP

505-20th Street North, Suite 1800
Birmingham, AL 35203
205/795-6588
mavercher@csattorneys.com
jmhooks@csattorneys.com
Attorneys for Maloy Defendants

James D. Turner
TURNER & TURNER
1426-22nd Avenue
Tuscaloosa, AL 35401
205/752-1502
Jturner003@aol.com
Attorney for Dick Holley &
    West Alabama Appraisal

Jeven Sloan
LOEWINSOHN, FLEGLE, DEARY, LLP
420-20th Street North, Suite 2000
Birmingham, AL 35203
jevens@lfdlaw.com

Gregory A. Brockwell
LEITMAN, SIEGAL & PAYNE, P.C.
420 20th Street N., Suite 2000
Birmingham, AL  35203
205/251-5900
gbrockwell@lsppc.com
Attorney for Jeven Sloan

Joseph E. Stott
STOTT & HARRINGTON, P.C.
2637 Valleydale Road
Birmingham, AL 35244
205/573-0500

joe@stottharrington.com
Attorney for Paul Toppins

s/Jack Hood
Jack Hood
Assistant United States Attorney

# GOVERNMENT EXHIBIT 5

# FEDERAL COURT MEMORANDUM OPINION (2017)

FILED

2017 May-26  PM 03:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

ALABAMA ONE CREDIT          )
UNION,                                     )
                                                )
          Plaintiff,                        )
                                                )
vs.                                           )          7:16-cv-01382-LSC
                                                )
PAUL TOPPINS, et al.,             )
                                                )
          Defendants.                     )
                                                )

## MEMORANDUM OF OPINION

On April 18, 2017, United States Magistrate Judge T. Michael Putnam entered a Report and Recommendation (Doc. 27), recommending that the above-styled matter be remanded to the Circuit Court of Tuscaloosa County, Alabama. The United States filed its objections on May 1, 2017. (Doc. 29.) Defendants Barry V. Frederick, Brandi B. Frederick, and The Frederick Firm (collectively, the "Frederick Defendants")[1] filed their objections on May 2, 2017. (Doc. 30.) This Court has considered the entire file in this action, together with the Report and Recommendation, and has reached an independent conclusion that the Report and

---

[1] Objections were purportedly filed on behalf of Barry V. Frederick and The Frederick Firm. However, The Frederick Firm is not listed as a defendant on this Court's docket sheet, and Barry V. Frederick is listed as counsel for himself and for Brandi B. Frederick. Because all three are named Defendants on the state court's docket sheet, this Court treats the objections as if filed by all three.

Recommendation is due to be adopted and approved, and this matter is due to be remanded to the Circuit Court of Tuscaloosa County.

## I.   BACKGROUND

As described in the Report and Recommendation, this action is related to the conservatorship of Plaintiff Alabama One Credit Union ("Alabama One"), by the Alabama Credit Union Administration ("ACUA"). After entering conservatorship, Alabama One filed suit against Defendants—attorneys, accountants, and appraisers who represented or otherwise provided services to Alabama One—in Alabama state court, alleging claims for negligence and professional malpractice. During the course of this litigation, Defendants sought to discover various documents that Alabama One asserted were prohibited from disclosure under state and federal law. With input from the parties, the state court entered two orders on July 13, 2016, directing Alabama One to submit the documents, which the parties refer to collectively as "Regulatory Information," for in camera review to determine whether the information was relevant or protected from disclosure.

On August 23, 2016, the United States removed the action to this Court pursuant to 28 U.S.C. § 1442(a)(1), which authorizes the federal government and its agencies and employees to remove a proceeding "against or directed to" them

that arises out of their official duties. The notice of removal states that the National Credit Union Administration ("NCUA"), an independent federal agency, "is the non-party subject of" the state court's orders directing Alabama One to produce the "Regulatory Information" for in camera inspection. (Doc. 1.) Contemporaneously with the removal, the United States moved to quash the portion of the state court's orders relating to the "Regulatory Information." (Doc. 2.) After several hearings on these issues, the magistrate judge issued the Report and Recommendation now before this Court. (Doc. 27.)

## II.   STANDARD OF REVIEW

Upon the filing of objections to a magistrate judge's proposed findings and recommendations, this Court "make[s] a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). This Court "may accept, reject, or modify" such findings or recommendations "in whole or in part." *Id.*

## III.   DISCUSSION

### A. OBJECTIONS BY THE UNITED STATES

The United States objects to the magistrate judge's conclusion that this case was "removed improvidently" and is due to be remanded to the state court for lack of subject matter jurisdiction. The removal statute upon which the United States

bases this Court's jurisdiction provides that the federal government, or a federal agency or officer, may remove an action that is "against or directed to" it. 28 U.S.C. § 1442(a)(1). It applies to "any proceeding" in which "a judicial order, including a subpoena for testimony or documents, is sought or issued." *Id.* § 1442(d)(1). The statute's purpose "is to protect the Federal Government from [state] interference with its 'operations.'" *Caver v. Cent. Ala. Elec. Coop.*, 845 F.3d 1135, 1142 (11th Cir. 2017) (quoting *Watson v. Philip Morris Cos.*, 551 U.S. 142, 150 (2007)). Historically, § 1442 has served as a mechanism by which federal officials faced with a civil or criminal proceeding arising out of the enforcement of their federal duties may seek a federal forum in which to raise federal law as a defense to the suit. *See Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1427 (11th Cir. 1996) (quoting *Willingham v. Morgan*, 395 U.S. 402, 405 (1969)); *Florida v. Cohen*, 887 F.2d 1451, 1453 (11th Cir. 1989) (quoting *Murray v. Murray*, 621 F.2d 103, 106 (5th Cir. 1980)).

As relevant here, the United States argues that the "application" of the state court's July 13, 2016, discovery orders "is directed to the NCUA" because the documents ordered to be produced for in camera inspection "belong to the NCUA." It objects to the magistrate judge's finding that the NCUA is not the "subject of" the state court's orders. Few courts have interpreted the precise

meaning of the "against or directed to" language, but the statute is clear that the federal agency need not be a formal party to an action in order to remove it. *See* § 1442(d)(1) (including "a subpoena for testimony or documents" within the definition of "civil action"); H.R. Rep. No 112-17, pt. 1, at 6 (2011), *as reprinted in* 2011 U.S.C.C.A.N. 420, 425 ("The bill clarifies that a civil action 'commenced' in State court includes those brought 'against' a Federal officer (which covers suits) as well as those 'directed to' a Federal officer (which presumably covers discovery proceedings)."). In this case, however, the state court's order is neither "against" nor "directed to" the NCUA, even if the records that may be subject to in camera inspection "belong to the NCUA" but are in Alabama One's possession. The order does not command the NCUA to take any action; rather, it directs *Alabama One* to produce the documents to the court.

The NCUA's regulations support this result. The regulations prohibit the disclosure of NCUA records "[c]ontained in or related to examination, operating or condition reports prepared by, or on behalf of, or for the use of NCUA or any agency responsible for the regulation or supervision of financial institutions. This includes all information, whether in formal or informal report form, the disclosure of which would harm the financial security of credit unions or would interfere with the relationship between NCUA and credit unions." 12 C.F.R. § 792.11(a)(8).

These records, when in the possession of a credit union like Alabama One, "remain the property of NCUA." *Id.* § 792.31. As such, the records cannot be disclosed "except as expressly authorized by the NCUA or as ordered by a federal court after the NCUA has had the opportunity to be heard." *Id.* § 792.40(c). The regulations instruct "persons who are not NCUA employees . . . but have custody of nonpublic records"—which presumably includes Alabama One and its representatives—to, upon receipt of a subpoena or discovery request, "promptly notify the NCUA" of the request and "notify the issuing court" that federal regulations prohibit disclosure. *Id.* § 792.40(b)(1). The target of the subpoena or request is directed to "appear[] at the time and place stated in the subpoena" but "decline to produce any records or give any testimony." *Id.* § 792.40(b)(2). Therefore, although the regulations give it the right to "advise the issuing court . . . that [the regulations] appl[y] and, in addition, . . . intervene, attempt to have the subpoena quashed or withdrawn, or register appropriate objections," *id.*, the NCUA does not act in place of the target of the request.

Stated another way, the NCUA's right to participate in an action in order to protect its interests does not transform a request to the party possessing the records into a proceeding "directed to" the NCUA. Thus, a court order commanding Alabama One to produce nonpublic documents that are subject to

§ 792.40 is not "directed to" the NCUA, even though it is the NCUA that

ultimately must authorize the production of such records. Rather, as the magistrate

judge concluded, the state court's order targets Alabama One, which has the

ability, because it possesses the records, to produce them to the court—albeit not

without legal consequences. Alabama One's obligations, under the NCUA's

regulations, are to notify the NCUA and to refuse to disclose the documents.

The proper procedure in this situation is for the NCUA to first present its

arguments to the state court.[2] If the court, after hearing these arguments,

nonetheless orders *the NCUA* to take some action relative to the documents, then

such an order would be "directed to" the NCUA and removal under § 1442(a)(1)

proper. Under those circumstances, the NCUA undoubtedly has a right to have its

federal defense—the regulations prohibiting disclosure—heard by this Court.

Suggesting that the NCUA involve itself in the state court action is not, contrary to

the contentions of the United States, "requir[ing the NCUA] to win its case before

[the case] can be removed." Obtaining an order "directed to" the NCUA does not

necessarily implicate the state court's determination of the merits of the NCUA's

arguments about whether the documents are indeed prohibited from disclosure.

---

[2] Indeed, a formal appearance in the proceeding to claim privilege as to certain documents is precisely the procedure that awarded the federal government "standing to maintain [an] appeal" in *Overby v. U.S. Fidelity & Guaranty Co.*, 224 F.2d 158, 161–62 (5th Cir. 1955), which the United States cites as support for its contention that it is the "subject of" the state court's orders.

Nor does this procedure run afoul of the Supreme Court's direction that § 1442 must be "liberally" construed. The United States argues that "[u]nder § 1442(a), the test should be whether or not the United States or one of its officers has a federal defense to the contested court action." However, such a test ignores the statute's plain language that to be removable, the proceeding must be "*against or directed to*" the United States. § 1442(a). Although the availability of a federal defense is a prerequisite to § 1442 removal, *Magnin*, 91 F.3d at 1427, it does not independently authorize the federal government to remove an action to assert the defense on behalf of a party to the action, which is essentially what has occurred here.

### B. Objections by the Frederick Defendants

The Frederick Defendants argue that to the extent the Report and Recommendation recommends remand of the counterclaims asserted in their "Further Answer" to the complaint (Doc. 13), this Court should retain those claims. However, the counterclaims are at present not properly before this Court because this action was inappropriately removed.[3] While it is procedurally possible that this Court may exercise jurisdiction over these claims in the future, the

---

[3] Even if removal had been proper under § 1442(a)(1), only the discovery proceeding, not the entire action, would be before this Court. *See* § 1442(d)(1) ("If removal is sought for a proceeding described in the previous sentence, and there is no other basis for removal, only that proceeding may be removed to the district court.").

assertion of a counterclaim based on federal law does not provide an independent basis for which the Frederick Defendants may invoke this Court's jurisdiction. *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831 (2002) ("[F]ederal jurisdiction generally exists 'only when a federal question is presented on the face of the *plaintiff's* properly pleaded complaint.'" (emphasis in original)). The Frederick Defendants' counterclaims are thus due to be remanded with the action.

## IV. CONCLUSION

For the reasons stated herein, the findings and recommendation of the magistrate judge are due to be ADOPTED and APPROVED as the findings and conclusions of this Court. This matter is due to be REMANDED to the Circuit Court of Tuscaloosa County, Alabama, for further consideration. A separate order consistent with this Opinion will be entered contemporaneously herewith.

**DONE** AND **ORDERED** ON MAY 26, 2017.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

186289

**GOVERNMENT EXHIBIT 6**

**FEDERAL COURT *CARRUTH* ORDER (2017)**

FILED
2017 Apr-18  PM 04:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| JOHN DAVID CARRUTH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 7:15-cv-1089-LSC |
| | ) | |
| JUSTICE D. "JAY" SMITH, III, | ) | |
| ALBERT G. LEWIS, III, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This case predates but is related to the August 27, 2015, conservatorship of Alabama One Credit Union ("Alabama One"), headquartered in Tuscaloosa, Alabama, by the Alabama Credit Union Administration ("ACUA"). The former CEO, John Carruth, alleged that the conservatorship was the illegitimate product of a political decision made by the governor (Bentley), the governor's legal adviser (Byrne), a state senator (Allen), and others to assist a former law partner of the governor's legal adviser to prevail in litigation pending against the credit union. In sum, he alleges that the defendants conspired to pressure Alabama One to resolve the lawsuits against it filed by defendant Justice D. "Jay" Smith, III, and that conservatorship was conceived and orchestrated by Smith as part of the campaign to force Alabama One to settle certain lawsuits brought against it by Smith.

As part of the discovery in this case, the plaintiff Carruth issued subpoenas for both the production of documents and deposition testimony from then-Governor Robert J. Bentley, then-Legal Advisor David B. Byrne, Jr., State Senator Gerald Allen, and Sarah Moore, as Administrator of the Alabama Credit Union Administration. Responding to the subpoenas even though not a party in the action, the United States, for and on behalf of the National Credit Union Administration ("NCUA"), filed a motion to quash all three subpoenas (Doc. 90), contending that many of the documents and much of the deposition testimony sought from Bentley, Byrne, Allen, and Moore, were or related to "regulatory information" prepared by or for the NCUA shielded from production by provisions in 12 C.F.R. Part 792, under the authority of the Federal Housekeeping Statute, 5 U.S.C. § 301. Additionally, Bentley and Byrne filed their motions (Docs. 92 & 93) to quash the deposition subpoenas issued to them, contending that as "high-ranking officials," they should not be required to testify concerning the reasons for actions they took, absent special need.[1] This deferential rule exists because, as high government officials, there are great demands on their time and courts should be careful not to further burden them with litigation demands except in extraordinary circumstances. Moore filed her motion to quash the subpoena

---

[1] The motions are explicitly limited to seeking to quash depositions subpoenas served on Bentley and Byrne. The motions state that Bentley and Byrne have previously objected to producing documents, which, they contend, relieve them of the obligation to do so unless Carruth moves to compel them to produce the documents. Senator Allen has not filed a motion to quash.

directed to her, reiterating the arguments made by the United States and asserting her own separate claims under Alabama law, the attorney-client privilege, and the work-product doctrine. (Doc. 94).[2]

Parallel to these subpoenas, the defendants, Smith, Albert G. Lewis, III, and Lewis Smyth Ford LLC, filed their motion to compel the plaintiff Carruth to produce documents withheld from production upon a claim of regulatory privilege under 12 C.F.R. § 792.11(5). (Doc. 102). "This motion to compel is directed to those documents which Plaintiff injects into this case but fails to produce due to the privilege assertion of the ACUA and NCUA." (Doc. 102, p. 6). The motion to compel does not seem to address other categories of documents requested by defendants that are not regulatory documents created by the ACUA or the NCUA.

Finally, on November 22, 2016, the Alabama Credit Union Administration ("ACUA") filed a motion for clarification of the court's November 17, 2016, Orders (Docs 104 & 105), contending that Alabama law prohibits the production of regulatory documents and information. "The statutory prohibition against disclosure of certain documents in this (or any other) civil proceeding referred to in Defendants' Motion to Compel are those articulated by NCUA and ACUA in their respective Motions to Quash subpoenas directed to the ACUA Administrator and other non-parties (Documents #90 and # 94, respectively) which remain pending

---

[2]  Moore expressly did not object to testifying in a deposition, but only to the production of documents covered by various privileges and protections identified in the motion.

3

before the Court." (Doc. 106, pp. 5-6). Thus, the ACUA's motion for clarification

focuses on whether Alabama law (as distinct from federal law) also prohibits the

production of the same collection of documents containing "Regulatory

Information" through discovery in this federal litigation.[3]

Discussion

*A. Government Officials*

The court takes judicial notice that Governor Robert Bentley has now

resigned from office,[4] meaning that he no longer can claim the high government

official status argued in his motion. This fact also is noted in the plaintiff

Carruth's Third Supplemental Opposition filed April 12, 2017. (Doc. 126). With

his leaving office, the underlying concern for avoiding burdens on the time of busy

public officials simply no longer exists for Bentley. The court also takes judicial

notice of media reports that the former governor's Chief Legal Advisor, David

---

[3]   The ACUA contends that plaintiff Carruth is not entitled to produce to the defendants many
of the same regulatory documents related to the conservatorship of Alabama One. When the
credit union went into conservatorship, Carruth and other former officers filed two statutory
appeals in the Circuit Court of Tuscaloosa County. As part of those statutory actions, the ACUA
produced to Carruth the very regulatory documents at issue in this case. In doing so, however, it
takes the position that it was required to by the unique nature of the statutory appeal of the
conservatorship to the state circuit court and that disclosure to Carruth was not a waiver of any
privilege the ACUA claims in the documents. Moreover, the ACUA contends that Ala. Code
§ 5-17-60(g) also precludes Carruth from using the documents for any purpose other the
statutory appeals or producing them in response to a discovery request by the defendants in this
action.

[4]   See   https://www.usatoday.com/story/news/politics/2017/04/10/alabama-governor-robert-
bentley-
impeachment/100295108/?utm_source=feedblitz&utm_medium=FeedBlitzRss&utm_campaign=
usatoday-newstopstories (viewed April 12, 2017).

4

Byrne, also has resigned or has been dismissed.  In any event, the court assumes that with Bentley's resignation, his confidential legal advisor is or soon will be out of government as well.  Accordingly, to the extent that the motions to quash subpoenas for Bentley and Byrne to give deposition testimony (Docs. 92 & 93) are grounded on the assertion that they are entitled to special deference as high government officials, the motions are now MOOT, and are DENIED on that basis. The parties may proceed with scheduling and taking the depositions of Bentley and Byrne.   Nonetheless the government's and the ACUA's motions to quash still implicate whether Bentley and Byrne may produce certain documents in which the NCUA and ACUA claim a regulatory privilege.[5]  That issue is discussed below.

   *B. Production of "Regulatory Information"*

   Both the United States and Sarah Moore, as the Administrator of the ACUA, neither of whom are parties in this action, move the court to quash the subpoenas *duces tecum* directed to Moore, Bentley, Bryne, and Allen to the extent the subpoenas seek production of documents described generally as "Regulatory

---

[5]   Bentley and Byrne argue that plaintiff Carruth also has subpoenaed other documents not implicating the NCUA's or the ACUA's claims of regulatory privilege, but that their objections to the document-production requests relieve them of the duty to produce documents unless and until Carruth files a motion to compel them to do so and the court orders them to do so.  Carruth has not filed a motion to compel production of documents from Bentley and Byrne.  Fed. R. Civ. P. 45(d)(2)(B) provides the relevant procedure.  If a non-party is subpoenaed to produce documents, he may object to the production, in which event "the serving party may move the court for the district where compliance is required for an order compelling production or inspection," and "[t]hese acts [production and inspection of documents] may be required only as directed in the order...."  Thus, at this point, Bentley and Byrne have no duty to produce non-regulatory documents as they have not been compelled by order upon any motion by Carruth.

Information," consisting of examination and audit reports related to Alabama One, and communications and inter-agency memoranda by and among the NCUA, the ACUA, and Alabama One, related the examination and audits of Alabama One. (Docs. 90 & 94). The United States contends that such "Regulatory Information" is exempt from production under 12 C.F.R. Part 792, while Moore and the ACUA assert additionally that <u>Alabama Code</u> § 5-3A-11 (1970)[6] prohibits production and disclosure of such documents. The United States also seeks to quash the subpoenas to the extent they seek production of prosecutorial documents related to the federal prosecution of Danny Ray Butler.

In contrast to these motions to quash subpoenas, the defendants in this action filed a motion to compel the plaintiffs, Alabama One and Carruth (not the NCUA or the ACUA), to produce documents in their possession related to, among other things, the examinations, audits, and conservatorship of Alabama One. (Doc. 106).[7] The defendants argue that Carruth and Alabama One have sued them,

---

[6]   In their later Motion for Clarification (Doc. 106), Moore and the ACUA focus on <u>Ala. Code</u> § 5-17-60(g), enacted July 1, 2016, rather than <u>Ala. Code</u> § 5-3A-11. <u>Ala. Code</u> § 5-17-60(g) appears to be the correct operative statute for these subpoenas issued in August 2016.

[7]   It is clear that the defendants' motion to compel (Doc. 102) is limited to seeking an order to compel the production of regulatory documents only, as distinct from other kinds of documents. At paragraph 7 of the motion, defendants state:

> In response [to defendants' request for production of documents], Plaintiff bjected and altogether withheld certain documents and redacted others, including many of the documents referenced in the Second Amended Complaint and his Initial Disclosures, because of a regulatory privilege (12 C.F.R. § 792.11(5)) that

alleging that they participated in a conspiracy to use political pressure to force Alabama One to settle certain lawsuits brought against Alabama One by the defendants.  They contend they cannot defend against these allegations without seeing the information in the examination and audit reports which purportedly justify the legitimacy of the conservatorship of Alabama One.  They contend that the ACUA (and through it, the NCUA) has waived the regulatory privilege by voluntarily disclosing the documents and records to former officers of Alabama One (Carruth and Tim Powell) during statutory challenges to the conservatorship filed in the Tuscaloosa County Circuit Court.

1.  The United States' Motion to Quash

The United States advances two arguments to quash the subpoenas for production of documents by Bentley, Byrne, Allen, and Moore: First, Carruth has not made a proper request to the NCUA for production of *its* documents and

---

purportedly exists as asserted by non-parties Alabama Credit Union Association and the National Credit Union Association:

> "Plaintiff objects to each Interrogatory and Request to the extent it seeks information or documents that the Alabama Credit Union Administration ("ACUA") and/or National Credit Union Administration ("NCUA") contend are statutorily protected from disclosure. . . . . Plaintiff cannot disclose the Disputed Information until the issue of statutory protection is resolved....

[See RFP Responses, Exhibit B hereto][See also  10/31/16 & 11/3/16 LTRS outlining categories of withheld documents, Exhibits C & D hereto]  *This motion to compel is directed to those documents which Plaintiff injects into this case but fails to produce due to the privilege assertion of the ACUA and NCUA.*

(Italics added for emphasis).

7

records under 12 C.R.F. Part 792; second, the documents are exempt from production under the Freedom of Information Act ("FOIA"). Federal regulations promulgated by the NCUA pursuant to the Federal Housekeeping Act, 5 U.S.C. § 301, restrict the disclosure of certain "nonpublic records" by both employees of the NCUA and non-employees alike. 12 C.F.R. § 792.40. The term "nonpublic records" is defined in 12 C.F.R. § 792.49 to mean

> [A]ny NCUA records that are exempt from disclosure under § 792.11, the NCUA regulations implementing the provisions of the Freedom of Information Act. For example, this means records created in connection with NCUA's examination and supervision of insured credit unions, including examination reports, internal memoranda, and correspondence, and, also, records created in connection with NCUA's enforcement and investigatory responsibilities.

As further elaborated in 12 C.F.R. § 792.11, "[a]ll records of NCUA or any officer, employee, or agent thereof, are confidential, privileged and exempt from disclosure," if they fall into any of eight categories of documents, most of which consistent with exemptions under the FOIA: (1) national defense or foreign policy classified documents; (2) NCUA internal personnel rules and practices; (3) documents exempted from disclosure by statute; (4) documents containing trade secrets or confidential commercial information submitted to the NCUA; (5) inter-agency or intra-agency memoranda or letters which would not be available by law to a private party in litigation with NCUA; (6) documents containing private

8

personal or medical information; (7) documents compiled for law enforcement purposes; and (8) documents and records "[c]ontained in or related to examination, operating or condition reports prepared by, or on behalf of, or for the use of NCUA or any agency responsible for the regulation or supervision of financial institutions." Of potential importance in this case are documents and records within the parameters of categories (4), (5), and (8).[8]

With respect to the document-production subpoenas served on Bentley, Byrne, Allen, and Moore, none of whom are employees of the NCUA, 12 C.F.R. § 792.40(b) requires that before non-employee witnesses may produce documents in their possession coming within the limitations of the regulation, they must notify the Office of General Counsel of the NCUA and decline to produce the documents or testify about their contents. 12 C.F.R. § 792.40(b). Witnesses are relieved of the duty to decline production of protected documents only "as expressly authorized by the NCUA or as ordered by a federal court after NCUA has had the opportunity to be heard." 12 C.F.R. § 792.40(c). Under the regulations, the service of a subpoena alone is not sufficient to obtain the production of the NCUA's nonpublic records in the hands of a nonemployee of the NCUA; a request for production must be submitted to the Office of General Counsel of the NCUA at

---

[8]   The court notes here that the subpoenas at issue do not seek the *testimony* of any employee of the NCUA, but only the testimony of former governor Bentley, legal advisor Byrne, Senator Allen, and ACUA Administrator Moore. Section 792.40 *et seq.* is applicable because the subpoenas also seek production from these witnesses of documents potentially fitting these provisions.

least 45 days before the production is needed. 12 C.F.R. § 792.44. "If you serve a subpoena on the NCUA or an NCUA employee before submitting a written request and receiving a final determination, the NCUA will oppose the subpoena on the grounds that you failed to follow the requirements of this subpart." 12 C.F.R. § 792.42(a). Once a request is received by the NCUA, it will review the request and respond, usually within forty-five days, making a determination whether to allow the production based on a number of factors set out in 12 C.F.R. § 792.46(a).[9]

It does not appear that either plaintiff Carruth or the defendants have requested from the NCUA authority for the disclosure of "nonpublic records" that may be in the hands of non-employees Alabama One, Bentley, Byrne, Allen, or Sarah Moore as Administrator of the ACUA. Rather, Carruth has attempted to subpoena them from Bentley, Byrne, Allen, and Moore under Fed. R. Civ. P. 45, and the defendants have requested them from Carruth pursuant to Fed. R. Civ. P. 34.

Both Rule 34 and Rule 45 are subject to the general discovery provisions of Rule 26, which limits discovery to "any *nonprivileged* matter that is relevant to any party's claim or defense and [which is] proportional to the needs of the case...."

---

[9]   Because the documents are being sought from the ACUA (and its Administrator), not the NCUA, some of the § 792.46 factors clearly do not apply, such as whether the request is burdensome, or interferes with the ability of NCUA employees to perform their jobs, or whether the NCUA would appear to favor one litigant over another.

Fed. R. Civ. P. 26(b)(1) (Italics added).  The NCUA claims that the examination and audit reports, inter-agency memoranda between it and the ACUA and Alabama One, internal agency reports prepared by either the ACUA or the NCUA, minutes of ACUA and NCUA Board meetings related to Alabama One, and documents reflecting action taken by Alabama One in response to ACUA or NCUA audits or examinations are all within the procedures promulgated by the NCUA in 12 C.F.R. Part 792, which is itself authorized by  5 U.S.C. § 301,[10] as construed by United States v. ex rel. Touhy v. Ragen, 340 U.S. 462 (1951).  Touhy regulations "are relevant for internal housekeeping and determining who within the agency must decide how to respond to a federal court subpoena."  United States v. McGraw-Hill Companies, Inc., 2014 WL 12589667, at *2 (C.D. Cal. June 13, 2014), quoting Watts v. Securities and Exchange Commission, 482 F.3d 501, 509–10 (D.C. Cir. 2007).   They do not, however, "create an independent privilege to withhold government information or shield federal employees from valid subpoenas."  Id. quoting Exxon Shipping Co. v. U.S. Dep't of Interior, 34 F.3d 774, 780 (9th Cir.

---

[10]   Title 5 U.S.C. § 301 states:

> The head of an Executive department or military department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and *the custody, use, and preservation of its records, papers, and property*.  This section does not authorize withholding information from the public or limiting the availability of records to the public.

(Italics added).

1994).  Application of <u>Touhy</u> regulations under § 301 is intended only to provide

an orderly process by which a government agency may determine whether a

demand for information from it is valid and lawful.   Such regulations by

themselves do not create a privilege or otherwise authorize the withholding of

information.[11]

The first question the court must answer is whether the United States,

relying on the NCUA's <u>Touhy</u> regulations, can prevent the disclosure of

documents *not* in the NCUA's possession, but, rather, in the possession of the

ACUA, Alabama One, Bentley, Byrne, Allen, or Moore.   Certainly, on their face,

the relevant NCUA regulations attempt to do so, requiring that "nonemployees" of

the NCUA decline to produce "nonpublic records," even when subpoenaed.   <u>See</u>

12 C.F.R. § 792.40.   In the instant case, the subpoenas in question were served on

Bentley, Byrne, and Allen for production of documents in their possession, and on

Moore for production of documents in the possession of the ACUA.   None of the

subpoenas was directed at the NCUA or any NCUA employee.

---

[11]   It is crucial to note that the United States has not explicitly claimed any recognizable privilege with respect to the documents subpoenaed by Carruth from Bentley, Byrne, Allen, and Moore, or requested from Alabama One by the defendants.   While it argues that its <u>Touhy</u> regulations and/or the exemptions in the Freedom of Information Act prohibit disclosure (<u>see</u> Doc. 90), it has not invoked any actual privilege it claims in documents *in the hands of other people or entities*. The FOIA deals only with what documents and information a federal agency must *itself* produce in response to a request.   <u>See</u> <u>Kissinger v. Reporters Comm. for Freedom of the Press</u>, 445 U.S. 136, 150, 100 S. Ct. 960, 968, 63 L. Ed. 2d 267 (1980) (agency not in possession of a document "has neither the custody or control necessary to enable it to withhold" in violation of the FOIA). There is nothing in FOIA that can be read as prohibiting disclosure by *other* people and entities.

The court is persuaded that the NCUA does have the authority under the Federal Housekeeping Act, 5 U.S.C. § 301, to promulgate regulations requiring parties not associated with the NCUA to decline to produce potentially protected documents in their possession so long as the documents can be regarded as being the property of the NCUA. In this case, to the extent that Bentley, Byrne, Allen and Moore have documents in their possession which the NCUA created and disclosed to them, 12 C.F.R. § 792.40 prevents them from producing the documents in response to a subpoena without the requesting party first following the procedures set out in Part 792.

The court has not found any Eleventh Circuit case authority dealing with the application of § 301 to the Touhy regulations promulgated by the NCUA or to "nonemployees" of a federal agency. Certainly the court of appeals has regularly recognized that "'an unbroken line of authority directly supports [the] contention that a federal employee may not be compelled to obey a subpoena contrary to his federal employer's instructions under valid agency regulations.'"  Moore v. Armour Pharmaceutical Co., 927 F.2d 1194, 1197 (11th Cir. 1991), quoting Boron Oil Co. v. Downie, 873 F.2d 67, 73 (4th Cir. 1989); see also Westchester General Hospital, Inc. v. Dep't of Health & Human Servs., 443 F. App'x 407, 411 (11th Cir. 2011) (unpublished) (affirming DHHS Touhy regulations with respect to the deposition of an employee of a DHHS contractor).  What the cases do not address

is whether the agency regulations can reach beyond its own employees and contractors to prevent someone never employed by the agency,[12] or otherwise associated with it, from disclosing arguably protected documents and information.

The Sixth Circuit, however, dealt with the scope of authority contained in the housekeeping statute. In <u>In re Bankers Trust Company</u>, 61 F.3d 465 (6th Cir. 1995), Proctor & Gamble brought a securities action against Bankers Trust. During discovery, Proctor & Gamble requested that Bankers Trust produce "certain documents which constitute or contain 'confidential supervisory information' under federal regulations promulgated by the Federal Reserve System." After the district court order Bankers Trust to produce the documents, Bankers Trust sought *mandamus* from the Sixth Circuit to set aside the discovery order because the plaintiff "failed to comply with the clearly applicable governing regulations of the Federal Reserve in attempting to obtain the documents from Bankers Trust." "Bankers Trust contends that the Board's regulations prohibit it, in all events, from disclosing such documents and dictate that P & G seek the documents in question directly from the Federal Reserve." <u>Id.</u> at 468. While recognizing that "federal regulations should be adhered to and given full force and effect of law whenever possible," the court of appeals concluded that the

---

[12]   Cf. <u>Boca Raton Community Hospital v. Tenet Healthcare Corp.</u>, 2006 WL 1523234 (S.D. Fla. April 24, 2006) (requiring exhaustion of administrative procedures with respect to whether DHHS <u>Touhy</u> regulations extended to a former employee of DHHS).

housekeeping statute "did not empower the Federal Reserve to prescribe regulations that direct a party to deliberately disobey a court order, subpoena, or other judicial mechanism requiring the production of information." Id. at 470, quoting Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984). The court explained, "To allow a federal regulation issued by an agency to effectively override the application of the Federal Rules of Civil Procedure and, in essence, divest a court of jurisdiction over discovery, the enabling statute must be more specific than a general grant of authority as found here." Id.

Similar reasoning was applied by a district court in Forgione v. HCA Inc., 954 F. Supp. 2d 1349, 1359 (N.D. Fla. 2013). That case began as a medical malpractice/wrongful death action in Florida state court. The plaintiff issued subpoenas to three employees of the Florida state Agency for Health Care Administration ("AHCA"), seeking their testimony concerning an investigation of a hospital carried out under state law. The United States removed the action to federal court, contending that the employees of the state administrative agency acted "under the direction" of the Department of Health and Human Services "in completing a survey assessing Fort Walton Beach Medical Center's compliance with certain Medicare and Medicaid health care provider requirements." Forgione v. HCA Inc., 954 F. Supp. 2d 1349, 1350 (N.D. Fla. 2013). "Because the three

state employees were acting 'under the direction' of HHS and CMS, the United

States claims they are subject to HHS's regulations governing the circumstances

under which someone employed by HHS cannot be compelled to give testimony or

produce documents without the agency's permission." Id.

The district court rejected that government's argument that the HHS

regulations could stretch to cover the employees of a *state* agency, even where that

agency coordinated its activities with the federal agency.   Applying Chevron

analysis,[13] the court wrote:

> The government argues that because the AHCA employees relied on
> their common notes and interviews to complete a survey for CMS, the
> entire investigation, including those actions taken solely for the state
> investigation, are within the bar of the regulations.  As far as this court
> is aware, neither Touhy or its progeny, nor any of the cases and
> statutes discussed in the parties briefs, address whether HHS, or any
> government agency for that matter, has the statutory authority under
> Touhy to prescribe by regulation the conduct of state employees
> pertaining to their legally mandated state activities.
>
> * * *
>
> Plaintiffs admit that section 301 allows for agencies to promulgate
> "housekeeping regulations" governing the conduct of their employees.
> They argue, however, that Section 301 does not grant authority for
> government agencies to interpret the term "employee" in such an
> expansive way as to regulate state actors' state conduct. Even
> assuming the word employee is ambiguous, section 301 specifically
> limits the promulgation of regulations to those affecting the agency's
> own employees. See 5 U.S.C. § 301 ("The head of an Executive

---

[13]   See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.
Ct. 2778, 81 L. Ed. 2d 694 (1984).

department or military department may prescribe regulations for the
government of his department," and "the conduct of its employees
....") (emphasis added); see also City of Arlington, Tex. v. F.C.C.,
___ U.S. ___, 133 S. Ct. 1863, 1874, ___ L. Ed. 2d ___ (2013)
("[W]here Congress has established an ambiguous line, the agency
can go no further than the ambiguity will fairly allow.").

Forgione v. HCA Inc., 954 F. Supp. 2d 1349, 1354–56 (N.D. Fla. 2013) (internal

footnote omitted); see also Gulf Group General Enterprises Co. W.L.L. v. United

States, 98 Fed. Cl. 639, 644 (Fed. Cl. 2011); Louisiana Dep't of Transportation &

Dev. v. United States Dep't of Transportation, 2015 WL 7313876, at *7 (W.D. La.

Nov. 20, 2015).   The court then denied the government's motions to quash the

deposition subpoenas directed at the AHCA employees.

The court believes both Bankers Trust and Forgione are distinguishable from

the instant circumstances.   In Bankers Trust, it was the third-party possessor of

documents (Bankers Trust), not the Federal Reserve, who sought to invoke the

Federal Reserve's Touhy regulations to shield it from a production request.   In the

instant case, it is the federal agency itself, the NCUA, who invokes the regulations,

not Bentley, Byrne, or Allen.   The NCUA is protecting its interest in its own

papers and documents.   In Forgione, the Department of Health and Human

Services sought to preclude state employees from giving deposition *testimony*.

The rationale of the case does not involve the production of the DHHS's

documents.   Indeed, the court in Forgione made plain the distinction between

documents created by or for the DHHS and those created on behalf of the state agency (AHCA), and that the subpoenas did not seek production of DHHS documents.

Although the court concludes that the federal housekeeping statute, 5 U.S.C. § 301, the congressional authority under which the NCUA promulgated its Touhy regulations, does not authorize the NCUA to dictate how Alabama state employees may respond to *federal* subpoenas for *testimony* about information lawfully in their possession, the housekeeping statute does support the NCUA's Touhy regulations related to the handling of its own papers, documents, and records, even those in the possession of someone else.  As the court in Forgione pointed out, § 301 only allows the head of an executive agency to prescribe regulations for "the conduct its employees," but it also authorizes the agency head to promulgate rules for "the custody, use, and preservation of *its* records, papers, and property."   (Italics added).  This grant of authority from § 301 means that, while it cannot prevent witnesses who have never been employed by NCUA, or otherwise associated with it, from testifying about information they lawfully possess, the NCUA is able to limit how *its* papers, records, and property are used.  Papers, records, and documents created or gathered by the NCUA become its "property" within the meaning of § 301, and it can exercise control over such property, even when it has been voluntarily disclosed or transferred to other people and entities in the ordinary

course of the NCUA's regulatory activities.   What the regulations cannot do,

however, is authorize the NCUA to dictate how documents and records that do not

belong to it are handled.   In this case, the NCUA cannot prevent discovery of

records, documents, and papers prepared by the ACUA, a separate state agency, or

gathered from sources other than the NCUA, even when those documents are later

shared with the NCUA.   Just as records or documents created by Alabama One or

the ACUA do not become the "property" of the NCUA simply because they are

shared with it, the NCUA does not lose its property interest in documents and

records it created or gathered simply because they are shared with the ACUA or a

credit union.   The NCUA may limit the manner in which *its* records and papers

may be produced by non-NCUA officials and agencies, as long as the NCUA

records and documents were shared with such other people or agencies in the

ordinary course of the NCUA's regulatory business.[14]   Before such documents and

---

[14]     Even this limitation may be short-lived.  At this point, the court concludes, with respect to
the NCUA's *own* papers and documents, only that neither Carruth nor the defendants have made
a proper request under the Touhy regulations, which is a condition precedent to challenging the
NCUA's refusal to allow production of its own records and documents.  Thus, to the extent the
subpoenas or requests for production of documents seek documents and records created by the
NCUA in the course of its regulatory activities related to Alabama One, the procedures required
by the Touhy regulations have not been exhausted.  Once the Touhy procedures are exhausted,
the determinations made by the NCUA are subject to judicial review.  As previously noted, the
NCUA has not invoked any recognizable privilege against producing its own documents, but
Carruth and the defendants must make a proper Touhy request first, at which time the NCUA
may articulate the reasons, if any, for withholding its own records and documents related to
Alabama One.

records can be disclosed or produced by a person or entity other than the NCUA, the requester must comply with the NCUA's Touhy regulations.

Thus, the government's motion to quash (Doc. 90) the subpoenas served on Bentley, Byrne, Allen, and Moore (as well as the ACUA, of which she is the Administrator) for the production of regulatory documents is due to be GRANTED only with respect to documents created or gathered by the NCUA and regarded as its property, disclosed to or shared with Bentley, Byrne, Allen, or Moore/ACUA by the NCUA in the ordinary course of its regulatory activities. The motion is DENIED as to documents and records prepared by, gathered by, or obtained from sources other than the NCUA. The government's motion to quash cannot prevent the taking of testimony from witnesses never employed by or associated with the NCUA, nor can it prevent the production of documents and records prepared by, gathered by, or obtained from persons or agencies other than the NCUA.[15]

## 2. The ACUA's Motion to Quash

### i. Regulatory Privilege

Separate from the motion to quash by the United States, the Alabama Credit Union Administration and its Administrator, Sarah Moore, have filed a motion to

---

[15] The court recognizes that it is possible that some records or documents created by the ACUA were created at the *express direction* of the NCUA, as distinct from documents or records created by the ACUA while performing its own state-mandated functions. To the extent that the ACUA created documents at the direction of the NCUA, and not as part of its ordinary state-mandated duties, such documents are rightly regarded as belonging to the NCUA. However, if the NCUA or ACUA claim such documents exist, they must be reasonably identified them in a privilege log in order to afford the parties and the court an opportunity to assess the claim of privilege.

quash Carrth's subpoena to them (Doc. 94), as well as a motion for clarification to

reiterate its position that Carruth also may not disclose or produce the regulatory

documents previously produced to him as part of the statutory appeals of the

conservatorship.  These motions focus principally on the Alabama state statutory

limitation on the disclosure of certain documents related to the regulation of credit

unions.

> Enacted July 1, 2016, Alabama Code § 5-17-60(g) states:
>
> All reports of examination, records reflecting action of a credit union,
> its supervisory committee, subsidiary or affiliate, taken pursuant
> thereto, and records and minutes of meetings of the Credit Union
> Board relating to a credit union or several credit unions, supervisory
> committee, subsidiary, or affiliate, shall be confidential and shall not
> be subject to subpoena or inspection except by subpoena from a grand
> jury served on the administrator.

The court has found no Alabama or Eleventh Circuit case authority construing this

statute or a similar one related to banks, Alabama Code § 5-3A-11.  In Allen v.

Barksdale, 32 So. 3d 1264, 1271 (Ala. 2009), after listing § 5-3A-11 among

various statutes limiting the disclosure of public records, the Alabama Supreme

Court observed, "The document reflecting the work of government belongs to the

public, and, although exceptions to disclosure of such documents are necessary,

any exceptions should be narrowly construed. In other words, the Open Records

Act favors disclosure, and exemptions to that Act, including those created by

statute, must be narrowly construed."   While this may be *dicta* insofar as it

concerns § 5-3A-11 and, even more remotely, § 5-17-60(g), it does suggest the balance to be struck under Alabama law between open disclosure of public records and the occasional need for confidentiality.

The fundamental question presented here is whether a federal court, litigating a question of federal law, is required to recognize a state-created limitation on access to information.  Moore and the ACUA contend that Alabama Code § 5-17-60(g) is a privilege, enacted into statutory law, that prohibits the disclosure of any information related to the ACUA's examination of and decision to conserve Alabama One.  One of the principal causes of action pleaded against the defendants, however, is a § 1983 conspiracy to violate Carruth's constitutional rights, although he also pleads several state-law claims as well.  (See Doc. 75). Federal Rule of Evidence 501 provides that "the privilege of a witness... shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience."  FRE 501.  "The federal law of privilege provides the rule of decision in a civil proceeding where the court's jurisdiction is premised upon a federal question, even if the witness-testimony is relevant to a pendent state law count which may be controlled by a contrary state law privilege."  Hancock v. Hobbs, 967 F.2d 462, 467 (11th Cir. 1992).  In a case such as this, where the plaintiff alleges violations of both federal and state law, federal courts look to federal law to determine the applicable

privileges.  In re Capital One Bank Credit Card Interest Rate Litigation, 286 F.R.D.

676, 680 (N.D. Ga. 2012).

When a state statute is invoked to preclude or limit discovery in a federal

action, "the special federal interest in seeking the truth in a federal question case

may require disclosure despite the existence of a state rule holding the same

communications privileged."  Carr v. Monroe Mfg. Co., 431 F.2d 384, 388 (5th

Cir. 1970).  At issue in Carr was a Mississippi statute that made the records of the

Mississippi Employment Security Commission ("MESC") "privileged and

confidential" and making it a criminal offense for any employee of the

Commission to revealed them.  The Fifth Circuit concluded that the Mississippi

statute did not embody a privilege known at common law and had to yield to the

federal interest in truth seeking.  If the claimed privilege is not one known at the

common law:

> The relevant inquiry, thus, becomes whether this court should, in the
> interests of comity, recognize the state confidentiality privilege as a
> matter of federal common law.  In re International Horizons, Inc., 689
> F.2d 996 (11th Cir. 1982).  In order to decide whether to adopt a state
> evidentiary privilege where, as here, a privilege is asserted which was
> "not existent in the common law but enacted by the [state] legislature
> based on unique considerations of government policy," this court must
> balance "the policies behind the privilege against the policies favoring
> disclosure."  American Civil Liberties Union, Inc. v. Finch, 638 F.2d
> 1336 (5th Cir. 1981); see also Carr v. Monroe Manufacturing Co., 431
> F.2d 384, 388 (5th Cir. 1970).

Sexton v. Poole Truck Lines, Inc., 888 F. Supp. 127, 129–30 (M.D. Ala. 1994).

Although the designation "privilege" is not used in § 5-17-60(g), the court is

persuaded that it attempts to codify the common law bank examiner's privilege,

albeit more broadly and more absolutely. "[T]he courts have long recognized that

the report of a bank examiner is protected by a qualified privilege. See, e.g., Bank

of America Nat'l Trust & Sav. Ass'n v. Douglas, 105 F.2d 100, 104–06 (D.C. Cir.

1939) ('by unbroken custom reports of bank examiners have been regarded as

privileged'); In re Franklin Nat'l Bank Securities Litig., 478 F.Supp. 577, 580–82

(E.D.N.Y. 1979)." In re Subpoena Served Upon Comptroller of Currency, & Sec'y

of Bd. of Governors of Fed. Reserve Sys., 967 F.2d 630, 633 (D.C. Cir. 1992).  A

difference between the Alabama statute and the common law privilege is the fact

that the bank examination privilege is not absolute.  One court has explained:

> Nonetheless, the discovery of bank examination information is not
> absolutely precluded. The bank examination privilege, like the
> deliberative process privilege, shields from discovery only agency
> opinions or recommendations; it does not protect purely factual
> material. See Environmental Protection Agency v. Mink, 410 U.S.
> 73, 90, 93 S. Ct. 827, 837, 35 L. Ed. 2d 119 (1973); Franklin Nat'l
> Bank, 478 F.Supp. at 581. Even when asserted to protect deliberative
> material, the privilege may be overridden where necessary to promote
> "the paramount interest of the Government in having justice done
> between litigants," Northrop Corp. v. McDonnell Douglas Corp., 751
> F.2d 395, 407 (D.C. Cir. 1984) (quoting Westinghouse Elec. Corp. v.
> City of Burlington, Vt., 351 F.2d 762, 767 (D.C.Cir. 1965)); or to
> "shed light on alleged government malfeasance," Franklin Nat'l Bank,
> 478 F.Supp. at 582; or in other circumstances "when the public's
> interest in effective government would be furthered by disclosure."

Id.  When the privilege is overridden for good cause, it is appropriate for the district court to consider the possibilities of redaction and a protective order to minimize any harm that might otherwise result from compelling disclosure of bank examination information.

In re Subpoena Served Upon Comptroller of Currency, & Sec'y of Bd. of Governors of Fed. Reserve Sys., 967 F.2d 630, 634 (D.C. Cir. 1992); see also Raffa v. Wachovia Corp, 242 F. Supp. 2d 1223, 1225 (M.D. Fla. 2002).

Because the court must apply the federal common law to the privilege question presented in this case, the court will not recognize the full scope of Alabama Code § 5-17-60(g), but, rather, only insofar as it is consistent with the common law bank examination privilege.  The court will not treat the privilege as absolute, just as the common law bank examination privilege was only a qualified privilege.  At most, the Alabama statute can limit discovery in a federal-question action only to the same extent as the federal common law privilege, and, to the extent the common law privilege can be overcome by a showing of good cause, so can the Alabama statute in this action.

The court finds further that both Carruth and the defendants have alleged and shown good cause sufficient to require the production of the ACUA's examination reports of and correspondence with Alabama One (and its Board and officers), as well as the minutes of, records of, or memoranda concerning any meetings related to Alabama One attended by a representative of the ACUA.  The

25

extensive factual pleading of the amended complaint establishes good cause to allow discovery into the motives of the ACUA and whether it was improperly influenced or manipulated by political actors. Potential government misconduct is a basis for finding good cause to override the qualified bank examination privilege in this case, particularly as the potential detriments of requiring production is reduced by the protective order (Doc. 105) already entered in this case, limiting the use of the ACUA information to preparation and presentation of this action. Likewise, the defendants have shown good cause to inquire into the examinations of Alabama One by the ACUA. They have been sued by Carruth, alleging that they conspired with government actors to illegitimately pressure Alabama One to settle lawsuits filed against the credit union by the defendants. Basic fairness requires that they be allowed to understand what information exists in the examination reports tending to establish the legitimacy or illegitimacy of the conservatorship.

### ii. Other Claims of Privilege

In addition to relying on Alabama Code § 5-17-60(g) for a regulatory privilege, Moore and the ACUA assert several other privileges, including the attorney-client privilege and the work-product doctrine. Fed. R. Civ. P. 26(b)(5)(A) requires:

(A) *Information Withheld.* When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:

  (i) expressly make the claim; and

  (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

A claim of privilege must be asserted on a document-by-document basis. To date, Moore and the ACUA have not produced a privilege log complying with Rule 26(b)(5)(A). Whether particular documents are shielded from disclosure by traditional privileges like the attorney-client privilege or work-product doctrine necessarily must await production of a privilege log from which the court and parties may assess the claim of privilege in relation to each document.

## Conclusion

Accordingly, it is hereby ORDERED as follows:

1. The motions to quash deposition subpoenas to Robert Bentley and David Byrne (Docs. 92 & 93) are DENIED. The parties may proceed with scheduling and completing the depositions of these witnesses.

2. The motion to quash subpoenas filed by the United States, acting through the National Credit Union Administration (Doc. 90), is GRANTED only with

respect to documents created or gathered by the NCUA and regarded as its property, disclosed to or shared with Bentley, Byrne, Allen, or Moore/ACUA by the NCUA in the ordinary course of its regulatory activities.   This is without prejudice to the right of the parties to issue new subpoenas *duces tecum* upon completion of the procedures required by 12 C.F.R. Part 792.   The motion is DENIED as to documents and records prepared by, gathered by, or obtained from sources other than the NCUA, subject to the protective order entered in this case.

3.   The motion to quash subpoenas filed by Sarah Moore and the Alabama Credit Union Administration (Doc. 94) is DENIED, subject to the protective order that requires the parties to maintain the confidentiality of the regulatory information produced by Moore and the ACUA.

4.   Likewise, the defendant's motion to compel John David Carruth to produce certain regulatory documents (Doc. 102) is DENIED as to documents created or gathered by the NCUA and regarded as its property, disclosed to or shared with Bentley, Byrne, Allen, or Moore/ACUA by the NCUA in the ordinary course of its regulatory activities, until the requesting parties have exhausted the procedures required by 12 C.F.R. Part 792 .   The motion is GRANTED, as to documents and records prepared by, gathered by, or obtained from sources other than the NCUA, subject to the protective order entered in this case, and plaintiff

Carruth is ORDERED to produce responsive documents within fifteen (15) days of

this Order.

    5.  The motion for clarification (Doc. 106) is MOOT.

    DONE this 18th day of April, 2017.

                      T. MICHAEL PUTNAM
                      UNITED STATES MAGISTRATE JUDGE

29