# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| ALABAMA ONE CREDIT UNION, )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>HUTTO & CARVER, P.C., *et al.*, )<br>)<br>Defendants.  ) | 7:18-cv-02102-LSC-GMB |

**MEMORANDUM OF OPINION AND ORDER**

On June 3, 2020, United States Magistrate Judge Gray Borden entered a Report and Recommendation (doc. 47), recommending that Defendant Hutto & Carver, P.C.'s ("Hutto & Carver") motion to add crossclaim against the National Credit Union Association ("NCUA") (doc. 25) be mooted and that Hutto & Carver's Alternative Motion to Compel (doc. 25) be granted, with the NCUA's conventional discovery responses due to be served on Hutto & Carver within 21 days of this Court's order addressed to the recommendation. The United States timely filed its objections on June 17, 2020. (Doc. 52.) This Court has considered the entire file in this action, together with the Report and Recommendation, and has reached an independent conclusion that the Report and Recommendation is due to be adopted and approved.

## I. BACKGROUND

As described in the Report and Recommendation, this action is related to the conservatorship of Plaintiff, Alabama One Credit Union ("Alabama One"), by the Alabama Credit Union Administration ("ACUA"). After entering conservatorship, Alabama One filed suit against Defendants[1]—attorneys, accountants, and appraisers who represented or otherwise provided services to Alabama One—in Alabama state court, alleging that they had engaged in professional malpractice. During the state court litigation, Defendants sought to discover various documents from Alabama One that Alabama One asserted were prohibited from disclosure under state and federal law. With input from the parties, the state court entered an order on July 13, 2016 ("discovery order" or "discovery proceeding"), directing Alabama One to submit the documents, which this Court will refer to as "Regulatory Information," for *in camera* review to determine whether the information was relevant or protected from disclosure.[2]

---

[1] The claims against one of the Defendants, Paul Toppins, were dismissed with prejudice on June 10, 2020. (Doc. 50.)

[2] On July 16, 2016, the state court entered a Protective Order covering information and documents exchanged in the case; however, the "Regulatory Information" is expressly outside the scope of the Protective Order.

On August 23, 2016, the United States, on behalf of the NCUA,[3] an independent federal agency, removed the case to this Court pursuant to 28 U.S.C. §§ 1442(a)(1) and (d)(1), which authorizes the federal government and its agencies to remove a proceeding "against or directed to" them that arises out of their official duties. (*See* Doc. 1 in *Alabama One Credit Union v. Toppins, et al.*, 7:16-cv-01382-LSC.) This Court remanded the case to state court because the discovery order was not "against or directed to" the NCUA and, accordingly, the NCUA could not rely on § 1442(d)(1) as a basis for removal.

On December 6, 2018, the state court granted a motion by Hutto & Carver, Alabama One's outside auditors, to add the NCUA as a necessary party. On December 21, 2018, the United States once again removed the case to this Court pursuant to 28 U.S.C. §§ 1442(a)(1) and (d)(1). Contemporaneously with the removal, the United States moved the court (1) to quash the state court order directing that the Regulatory Information be submitted for *in camera* review because it includes records that are protected from public disclosure by the NCUA's regulations, and (2) to dismiss the NCUA as a party to the lawsuit because it enjoys

---

[3] In sum, the NCUA operates as both a regulator for existing credit unions and a conservator for defunct credit unions. It was created by the Federal Credit Union Act, 12 U.S.C. § 1751 *et seq. See* 12 U.S.C. § 1752a(a) (establishing "in the executive branch of the Government an independent agency to be known as the National Credit Union Administration").

sovereign immunity. Following a hearing on September 19, 2019, this Court denied without prejudice the United States' motion. (Doc. 21.)

On January 10, 2020, Hutto & Carver moved to compel the NCUA to respond to its conventional written discovery or, in the alternative, to assert a crossclaim against the NCUA under the Administrative Procedure Act, 5 U.S.C. § 702 *et seq.* (the "APA"). (Doc. 25.) According to the motion, Hutto & Carver served conventional written discovery on the NCUA on November 14, 2019. Additionally, on December 3, 2019, Hutto & Carver received from the NCUA a response to Hutto & Carver's September 29, 2017, request for documents pursuant to *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) ("*Touhy* request"), in which the NCUA stated that it would not produce any of the requested documents. With respect to both Hutto & Carver's *Touhy* request and its conventional written discovery, the NCUA's position is that Hutto & Carver may challenge the agency's decisions on document production only by filing a new and distinct lawsuit under the APA. After Hutto & Carver's motion was fully briefed, the Magistrate Judge issued the Report and Recommendation now before this Court. (Doc. 47.)

## II. STANDARD

Upon the filing of objections to a magistrate judge's proposed findings and recommendations, this Court "make[s] a de novo determination of those portions of

the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). This Court "may accept, reject, or modify" such findings or recommendations "in whole or in part." *Id.*

### III. DISCUSSION

The United States lodges two primary objections to the Report and Recommendation. First, the United States objects to the conclusion that the NCUA is not entitled to sovereign immunity because it did not satisfy the Supreme Court's high bar of clearly showing the necessity of immunity to avoid grave interference with a government function. The United States also insists that the NCUA's sovereign immunity deprived the state court of subject matter jurisdiction over the action and, by extension, this Court lacks subject matter jurisdiction on removal under the "derivative jurisdiction" doctrine. Second, the United States objects to the conclusion that the Court can review the NCUA's decisions not to produce certain documents under the APA standard as part of this pending proceeding, rather than requiring the filing of a new and distinct APA action. The Court will address each argument.

#### A. Sovereign Immunity

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). The federal

government's waiver of sovereign immunity "must be unequivocally expressed in statutory text." *Lane v. Pena*, 518 U.S. 187, 192 (1996). One way for Congress to waive a federal agency's sovereign immunity is by inserting a "sue and be sued" clause in the organic statute creating the agency. *See Meyer*, 510 U.S. at 475. A common "sue and be sued" clause empowers the agency to "sue and be sued, complain and defend, in any court of competent jurisdiction of the United States." *See, e.g.*, *id.* at 480 (quoting 12 U.S.C. § 1725(c)(4)) (explaining the clause within the Federal Savings and Loan Insurance Corporation's organic statute). By inserting such a broad "sue and be sued" clause in an agency's organic statute, Congress effects a "broad" waiver of the agency's sovereign immunity. *Id.* at 475 (quoting *United States v. Nordic Village, Inc.*, 503 U.S. 30, 34 (1992)). The Supreme Court has admonished that broad "sue and be sued" clauses are to be "'liberally construed,' notwithstanding the general rule that waivers of sovereign immunity are to be read narrowly in favor of the sovereign." *Id.* at 480 (internal citation omitted).

The Supreme Court has long recognized three implied exceptions to a federal agency's waiver of sovereign immunity. *See Fed. Hous. Admin. v. Burr*, 309 U.S. 242, 245 (1940). The relevant exception here is when the federal agency "clearly show[s]" that an implied exception to the waiver of immunity "is *necessary* to avoid *grave* interference with the performance of a governmental function." *Id.* (emphases

added). In 2019, the Supreme Court reiterated the three implied exceptions and emphasized that showing entitlement to an exception is a "high bar" for a federal agency to meet. *See Thacker v. Tenn. Valley Auth.*, 139 S. Ct. 1435, 1443 (2019).

The Report and Recommendation concluded that the sue-and-be-sued clause contained in 12 U.S.C. § 1789(a)(2) of the Federal Credit Union Act waived the NCUA's sovereign immunity in federal or state court, and the United States had failed to demonstrate an exception to the waiver. In its objections, the United States insists that an implied exception to the waiver is necessary to avoid grave interference with the NCUA's government functions. It asserts that one of the NCUA's principal government functions is "protecting the stability of the United States' financial system by its regulation and supervision of the nation's credit unions." (Doc. 52 at 4.) To that end, the NCUA reviews credit unions' confidential records and produces reports of examination that evaluate their financial conditions. In turn, "[t]his information is used" to analyze the soundness of credit union management and risks of potential losses, as well as to identify problem areas for the credit union to improve. (*Id.*) The United States asserts that the NCUA's examination process and analysis "is central to its government function as a regulatory and supervisory agency," as is the NCUA's "process of maintaining the confidentiality of its examination records and analysis." (*Id.* at 4–5.) The United

States avers that "the security of financial institutions depends on public confidence" and that such confidence "*could* be undermined by public release of candid evaluations of the regulator." (*Id.* at 5 (emphasis added).) The United States insists that disclosure of the documents sought by Hutto & Carver would require the NCUA to "divulge sensitive information about the agency's regulatory actions, and would risk a grave interference with the performance of NCUA's governmental function." (*Id.* at 6.)

This Court first notes that the arguments advanced in the United States' objections were not made to the Magistrate Judge during briefing on Hutto & Carver's motion (doc. 25), despite the United States raising and arguing the issue of sovereign immunity (*see* doc. 30 at 3–4). "[A] district court has discretion to decline to consider a party's argument [raised in objections to the magistrate judge's report and recommendation] when that argument was not first presented to the magistrate judge." *Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009). Even considering the United States' new arguments, this Court agrees with the Report and Recommendation's conclusion that the United States has not met the "high bar" of clearly showing that immunity is necessary to avoid a grave interference with a government function. In the absence of any authority indicating otherwise, the United States' argument that public confidence "*could* be undermined by public

release of candid evaluations of the regulator" is insufficient to show that immunity is necessary to avoid grave interference with the NCUA's government functions.

The United States failed to cite any authority since *Burr* where a court held that it was "clearly shown" that subjecting a federal agency to suit would be a "grave interference" with a government function.[4] This Court's independent research

---

[4] The United States did, in a footnote, cite *Dantzler, Inc. v. Empresas Berríos Inventory & Operations*, 958 F.3d 38 (1st Cir. 2020), in support of its position that the NCUA would suffer a grave interference with the performance of its government function. *Dantzler* involved a suit brought by a putative class of shippers who use the services of ocean freight carriers to import goods into Puerto Rico through the port of San Juan. The claims stemmed from a cargo scanning program implemented by the Puerto Rico Ports Authority ("PRPA") to improve the safety of the port. The *Dantzler* court ultimately held that the class lacked constitutional standing to sue, *id.* at 43, but also stated in a footnote that it found it "difficult to see how PRPA cannot be cloaked with sovereign immunity here in its performance of an inspection function that is governmental in nature," *id.* at 50 n.6. However, this Court finds *Dantzler* neither applicable nor persuasive for four reasons.

First, PRPA is not a federal agency or instrumentality but rather a public corporation created by the Commonwealth of Puerto Rico. *See Grajales v. P.R. Ports Auth.*, 831 F.3d 11, 13–14 (1st Cir. 2016). Under First Circuit precedent, "Puerto Rico's sovereign immunity in federal courts parallels the *states' Eleventh Amendment immunity*." *Jusino Mercado v. Commonwealth of P.R.*, 214 F.3d 34, 39 (1st Cir. 2000) (emphasis added). Thus, *Dantzler* addressed a different species of sovereign immunity than the sovereign immunity applicable to the federal government and its agencies. Second, the *Dantzler* court explained that its holding on standing grounds made it "unnecessary" to reach PRPA's sovereign immunity argument, *Dantzler*, 958 F.3d at 50 n.6, thereby rendering *dicta* the court's statements about sovereign immunity. Third, the *Dantzler* court made clear that its speculation about the applicability of sovereign immunity was based in part on First Circuit precedent addressing whether PRPA is an arm of the Commonwealth of Puerto Rico entitled to assert the Commonwealth's immunity. *See id.* (citing *Grajales*, 831 F.3d at 11). But given that *Grajales* held that PRPA is *not* an arm of the Commonwealth entitled to assert the Commonwealth's immunity, *see* 831 F.3d at 30–31, this Court is not sure how *Grajales* supports the proposition offered in *Dantzler*. Finally, while it observed that PRPA's cargo scanning program "was implemented to further the governmental purposes of improving national security and ensuing proper tax collection," *Dantzler*, 958 F.3d at 50 n.6, the *Dantzler* court failed to articulate *how* the suits at issue would interfere with that governmental function, let alone how such interference was "clearly shown" as required by the Supreme Court in *Thacker*.

reveals that the Supreme Court and the majority of Circuit Courts of Appeals presented with this issue have concluded that the federal agency had not demonstrated grave interference. *See Loeffler v. Frank*, 486 U.S. 549, 556–57 (1988) (concluding that subjecting the United States Postal Service to interest awards would not pose a threat of grave interference with its functions); *F.D.I.C. v. Hulsey*, 22 F.3d 1472, 1480 (10th Cir. 1994) (FDIC had not shown that sovereign immunity from breach of contract claims was "necessary to avoid a grave interference with the FDIC's function"); *A.L.T. Corp. v Small Bus. Admin.*, 801 F.2d 1451, 1462 (5th Cir. 1986) (concluding, in case where Small Business Administration sought immunity from breach of contract claim, that there was "no grave interference with the SBA's function as a result of suits such as these"); *Beneficial Fin. Co. of N.Y. v. Dallas*, 571 F.2d 125, 128 (2d Cir. 1978) (concluding, in case where United States Postal Service sought immunity from garnishment proceedings, that there was "no showing of grave interference with any USPS function"); *May Dep't Stores Co. v. Williamson*, 549 F.2d 1147, 1148 (8th Cir. 1977) (rejecting Postal Service's argument that sovereign immunity from garnishment proceedings was "necessary to avoid grave interference with its performance"); *Standard Oil Div., Am. Oil Co. v. Starks*, 528 F.2d 201, 204 (7th Cir. 1975) (reversing district court's grant of sovereign immunity to United States Postal Service because Postal Service had not made "clear

showing" that suits at issue would impose grave interference with the Postal Service's functions); *see also Goodman's Furniture Co. v. U.S. Postal Serv.*, 561 F.2d 462, 464–65 (3d Cir. 1977) (agreeing with analysis and reasoning in *Standard Oil* and *May Department Stores* and similarly concluding that the Postal Service was not immune from garnishment proceedings).

While the above cases are generally thin in analysis, their conclusions are instructive because they illustrate how demonstrating entitlement to an exception to the waiver of sovereign immunity is a "high bar" to clear. *See Thacker*, 139 S. Ct. at 1443. For example, in *Standard Oil*, the Seventh Circuit reversed a district court's holding that the United States Postal Service was entitled to sovereign immunity from garnishment proceedings for the possible debts of 750,000 employees. 528 F.2d 201, 204 (7th Cir. 1975). The district court had concluded that subjecting the Postal Service to such suits would impose a grave interference with the Postal Service's functions. *Id.* The Seventh Circuit disagreed because there was "no '*clear showing*' of interference." *Id.* (emphasis added). The court explained that it could not "on the mere assertions made here [by the Postal Service] imply that Congress did not intend the full consequences of what it said" when it gave the Postal Service

the power to sue and be sued. *Id.* Accordingly, the court concluded that there was "no basis in law or policy" for blocking such proceedings. *Id.*[5]

This Court finds that there has been no clear showing that subjecting the NCUA to suit would gravely interfere with its government functions. The Court will not "on the mere assertions made here" by the United States "imply that Congress did not intend the full consequences of what it said" when it gave the NCUA the power to sue and be sued. *See Standard Oil*, 528 F.2d at 204. Moreover, the possibility that the NCUA will have to disclose some details of its regulatory functions and findings does not clearly show grave interference with its government functions. This is so especially considering the Court's authority to employ mechanisms such as protective orders to prevent disclosure to nonparties or to

---

[5] The Court's research also revealed a case wherein the Fourth Circuit Court of Appeals, in an unpublished decision, concluded that grave interference was shown. *See Hendy v. Bello*, 555 F. App'x 224, 226 (4th Cir. 2014). In *Hendy*, the plaintiff, a United States Postal Service employee, sought a state-law injunction that would prohibit her supervisor from coming to their mutual workplace, the Westlake Post Office in Bethesda, Maryland. The state court granted the injunction, and the United States removed the case to the District Court for the District of Maryland under the federal officer removal statute. *Id.* at 225. The district court dismissed the action for lack of subject matter jurisdiction on the grounds of sovereign immunity, and the Fourth Circuit affirmed. *Id.* at 227. The court concluded that "in prohibiting a federal employee from entering her federal workplace, waiving sovereign immunity would disturb the federal agency's internal functions." *Id.* at 226. It also reasoned that it was "inconsistent with the principle of federal supremacy to allow such interference with the performance of a federal employee's duties." *Id.* Accordingly, the court concluded that it "could not have been Congress's intent" to waive sovereign immunity under these circumstances. *Id.* Even if the Court were persuaded that *Hendy* reached the correct conclusion, the Court finds it factually distinguishable from this case, and thus the Court is not persuaded that a similar outcome is warranted here.

protect the NCUA from having to disclose certain documents at all that are found to be confidential or privileged. Accordingly, this Court agrees with the Report and Recommendation's conclusion that the NCUA has not demonstrated an exception to its waiver of sovereign immunity.

### B. Derivative Jurisdiction

The United States makes a related argument that, because the NCUA enjoys sovereign immunity from suit in state court, the state court lacked subject matter jurisdiction over the action and this Court acquired none on removal under the "derivative jurisdiction" doctrine.[6] Because this Court has concluded that the NCUA has waived its sovereign immunity, the United States' derivative jurisdiction argument necessarily fails as well.

### C. Independent APA Action

Finally, the United States objects to the Report and Recommendation's conclusion that Hutto & Carver is not required to file a new and distinct APA action to obtain review of the NCUA's decisions to deny its *Touhy* requests and its refusal to respond to conventional discovery. The Report and Recommendation correctly observed that "[a]lthough the Eleventh Circuit has not been presented with the

---

[6] "As the state court was without jurisdiction over either the subject-matter or the United States, the District Court could not acquire jurisdiction over them by the removal. The jurisdiction of the federal court on removal is, in a limited sense, a derivative jurisdiction." *Lambert Run Coal Co. v. Baltimore & O.R. Co.*, 258 U.S. 377, 382 (1922).

precise question of whether the review of an agency's decision to deny a *Touhy* request necessitates an independent APA action," it has reviewed objections similar to the NCUA's here "without insisting on a separate APA suit or even a formal joinder of the agency as a party." (Doc. 47 at 10.)  In *Moore v. Armour Pharmaceutical Co.*, the Eleventh Circuit reviewed the district court's grant of a federal agency's motion to quash under the APA's arbitrary or capricious standard as part of the pending civil action and not as part of a separate APA proceeding.  927 F.2d 1194, 1197 (11th Cir. 1991).

Moreover, this Court agrees with the Report and Recommendation that *Forgione v. HCA, Inc.*, 954 F. Supp. 2d 1349 (N.D. Fla. 2013) (construing state court litigation as an APA action after federal agency removed case and then filed motion to quash subpoena), while not binding, is instructive.  In *Forgione*, state court plaintiffs sought to depose two employees of Florida's Agency for Health Care Administration ("ACHA").  The United States objected to the subpoenas on the grounds that the ACHA employees had acted under the direction of the United States Department of Health & Human Services ("HHS") such that they were subject to HHS's *Touhy* regulations, and it removed the case to federal court.  The court concluded that the parties had effectively "transformed" the removed discovery dispute into an APA claim.  *Id.* at 1352–53.  The court explained that while

the United States "did not explicitly consent to characterization of the instant proceedings as an APA action," the United States nevertheless "implicitly consented by removing this action, advancing the claim that the state employees are subject to HHS's *Touhy* regulations, and urging only that [HHS's] actions did not violate" the APA standard. *Id.* at 1353. The court also addressed the "significant reasons" why judicial efficiency weighed in favor of resolving the APA dispute within the pending federal case, including the court's familiarity with the dispute and the expectation that the plaintiffs would "simply file an APA action the next day, with nearly identical briefs and arguments" if the court dismissed the pending case. *Id.*

    This Court agrees with the Report and Recommendation that, just as in *Forgione*, the United States here "has not expressly consented to adjudicating its APA dispute with Hutto & Carver in the instant federal action, but its actions and legal arguments . . . amount to an implicit admission that this is an appropriate forum for the APA dispute." (Doc. 47 at 13.) As in *Forgione*, the United States removed this action to federal court amid a state court discovery dispute related to a federal agency. In both cases, the United States argued that the agency's *Touhy* regulations govern disclosure of the requested materials. As in *Forgione*, the United States here invokes the arbitrary and capricious standard among other arguments against the

disclosure of the materials. (*See, e.g.*, doc. 30 at 5; doc. 36 at 1.) Finally, the same judicial efficiency considerations weigh in favor of resolving the APA dispute within the instant case—"most importantly, the potential for avoiding needless delay and expense associated with dismissing and refiling this dispute tomorrow in the same forum." (Doc. 47 at 13–14.) Like the Magistrate Judge, this Court is not willing to endorse the United States' formalistic approach to APA jurisdiction, especially when the Eleventh Circuit has not insisted upon such an approach. *See Moore*, 927 F2d at 1197.

In its objections, the United States did not discuss *Moore* or *Forgione*, nor did it offer any case law where a court reached a different conclusion. Instead, the United States advanced three reasons why a separate APA action is required, none of which this Court finds persuasive. First, the United States asserts that courts must conduct their review under the APA based on "the whole record or those parts of it cited by a party," *see* 5 U.S.C. § 706, and that APA review here would be premature because the Court does not have the "whole record" before it. Because the "whole record" is lacking, the United States argues that it would be "difficult" for the Court to decide whether the NCUA's actions were arbitrary or capricious. The Court is not persuaded for three reasons. First, according to the statutory language the United States cites, this Court need not review "the whole record" in

every case but instead can review "those parts of [the record] cited by a party." Second, the United States does not explain what is missing from the record in order to make it "whole" or complete. Finally, the United States does not explain why the record could not be made "whole" or otherwise supplemented in the current action as opposed to in an entirely separate, new APA action.

Second, the United States argues that the scope and methods of discovery are broader under the Federal Rules of Civil Procedure than the APA. The United States is conflating the issues. Although certain methods of discovery may be unavailable in an APA action, the NCUA's own regulations plainly state that "[w]hen the NCUA is a party to a legal proceeding, it will be subject to the applicable rules of civil procedure governing production of documents and witnesses." 12 C.F.R. § 792.49. The NCUA is a party to this proceeding. Accordingly, the Court does not find it improper to subject the NCUA to conventional discovery regarding production of documents and witnesses, particularly since the United States makes no argument that Hutto & Carver's discovery requests exceed what is contemplated by 12 C.F.R. § 792.49. Moreover, as the Report and Recommendation observed, the NCUA may file a Motion for Protective Order objecting to discovery requests as beyond the scope of its *Touhy* regulations, and the court can address that motion once it is filed.

Third and finally, the United States says that APA review requires deference to an agency's decision and that such deference would be lost in a civil action with broad discovery. The United States' concern does not follow from the Report and Recommendation's conclusions or the Eleventh Circuit's decision in *Moore*. *Moore* resolved a federal agency's motion to quash under the APA's arbitrary and capricious standard without insisting on a separate APA proceeding. Further, the Report and Recommendation found that "this is the correct forum for resolving [NCUA's] objections under the APA's arbitrary and capricious standard of review." (Doc. 47 at 14.) In sum, it is clear that the United States wants APA review of the NCUA's decisions under the arbitrary and capricious standard, and this is precisely what is contemplated by both the Report and Recommendation and *Moore*.

## IV. CONCLUSION

For the reasons stated herein, the findings and recommendation of the Magistrate Judge are hereby ADOPTED and APPROVED as the findings and conclusions of this Court. Hutto & Carver's motion (doc. 25) is GRANTED IN PART insofar as it seeks to compel the NCUA to respond to Hutto & Carver's discovery requests and DENIED IN PART AS MOOT insofar as it seeks to add a crossclaim against the NCUA. The NCUA's conventional discovery responses are due to be served on Hutto & Carver within 21 days from the date of this Order.

**DONE** and **ORDERED** on July 13, 2020.

                                                          L. Scott Coogler
                                       United States District Judge

199335